IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

HARTLEY GIBBONS, JR. and           *
RICKEY A. LUMPKIN,                  *
                                    *
        Plaintiffs,                 *
                                    *
v.                                  *      CIVIL ACTION NO.
                                    *      CV 109-130
RICHMOND COUNTY BOARD OF            *
EDUCATION and JAMES F.              *
THOMPSON, individually and in      *
his former official capacity       *
as Interim Superintendent of       *
the Richmond County Public         *
Schools,                           *
                                    *
        Defendants.                 *


---------------

**O R D E R**

---------------


     This matter is before the Court on Defendants' Motion for
Summary Judgment. (Doc. no. 23.)  Upon consideration of the
parties' briefs, the relevant law and the record evidence, the
motion is **GRANTED** as set forth below.


## I. Background

     Plaintiff Hartley Gibbons, Jr. is a fifty-nine year old
African American male who, at the time of this lawsuit, has
worked for Defendant Richmond County Board of Education (the
"Board") as an educator for fifteen years. (Compl. ¶ 1.)
Plaintiff Rickey A. Lumpkin is a fifty-four year old African

American male who has worked for the Board since 1997.  (Id. ¶ 2.)

In 2004, Gibbons was promoted from his position as assistant principal at a high school to principal of Glenn Hills Middle School.  (Id. ¶ 8.)  In 2005, Lumpkin was similarly promoted from his high school assistant principal position to principal of Tubman Middle School.  (Id. ¶ 10.)

When Plaintiffs assumed their duties as principals at their respective middle schools, both schools had previously failed to satisfy the Adequate Yearly Progress ("AYP") criteria set forth under the "No Child Left Behind" legislation ("NCLB") for seven consecutive years.[1]  (Doc. no.

---

[1] The background of this legislation and the standards contained therein are described in detail in Matthew D. Knepper's law review comment, Shooting for the Moon: The Innocence of the No Child Left Behind Act's One Hundred Percent Proficiency Goal and Its Consequences, 53 St. Louis Univ. L.J. 899 (2009).  The comment reads, in part, as follows:

> NCLB sets out a system for "school improvement," which targets those schools that fail to make AYP.  Using self-determined academic standards and assessments, states must apply different labels to schools, which must also be made known to the public.  Any school that fails to make AYP for two consecutive years is labeled as "identif[ied] for school improvement."  This means that "the local educational agency shall, not later than the first day of the school year following such identification, provide all students enrolled in the school with the option to transfer to another public school served by the local educational agency. . . ."  This is commonly referred to as the "school choice" provision.  Such a school must also develop and submit a plan that details how it intends to improve its student performance.

> If the school fails to make AYP in the next year, it must offer "supplemental education services" (SES), such as after-school programs run by private companies, to its students.  Schools that continue to fail to make AYP two years after being identified for improvement are then labeled for "corrective action."  Under this label, in addition to offering school choice and SES, a school must take at least one of the

40 at 4.)  In addition, both Glenn Hills Middle and Tubman Middle had a large number of discipline problems.  (Gibbons Dep. at 15-18; Lumpkin Dep. at 14-17).

## A.  Demotion from Middle School Principalships

Due to their repeated failure to meet AYP requirements, Glenn Hills Middle and Tubman Middle were under contract monitoring by the Georgia State Department of Education ("DOE").  (Doc. no. 40-2 at 2.)  Contract monitoring is a form of corrective action in which the DOE and the local school system enter into an agreement regarding the management and operation of a school receiving state assistance.  (Gibbons Dep. at 28, 30.)  It involves a progressive scheme of DOE oversight.  (Doc. no. 40-2 at 3.)  Schools that are subject to contract monitoring are required to produce strategic plans on how to improve, which are subject to review by the DOE, the local superintendent, and other school officials.  (Gibbons

---

following corrective actions: 1) replace the school staff, 2) implement a new curriculum, 3) decrease the school-level management authority, 4) appoint an outside expert, 5) extend the school day or year, or 6) restructure the internal organization of the school.

Finally, for schools that still fail to meet AYP, the final label to be applied is "[r]estructuring," in which a school must take one or more of the following more drastic "alternative governance" arrangements: 1) reopen the school as a charter school, 2) replace the staff, 3) contract out the school to a private company, 4) institute a state takeover of the school, or 5) "[a]ny other major restructuring of the school's governance arrangement that makes fundamental reforms. . . ."

Id. at 903-04 (citations omitted).

Dep. at 30.) During the spring of 2007, Glenn Hills Middle and Tubman Middle were two of the three public schools in Richmond County, out of sixty, subject to contract monitoring. (Thompson Dep. at 90-91.)

Officials from the DOE held meetings with the Richmond County School Board Interim Superintendent, James Thompson, and his staff about the problems at Glenn Hills Middle and Tubman Middle.[2] (Thompson Dep. at 52-53.) At these meetings, the DOE and Thompson's staff recommended changes that were intended to improve performance at the schools. (Id. at 88-89.) Specifically, they recommended replacing Plaintiffs with new principals at Glenn Hills Middle and Tubman Middle. (Id.) Thompson likewise recommended that Plaintiffs be replaced.[3] (Id. at 89-91.)

In March of 2007, Thompson met with both Plaintiffs and told them that, pursuant to the recommendations, they would be replaced in their positions as principals. (Id. at 56-58.) He added that he would recommend that they be reassigned to another position within Richmond County. Thompson further

---

[2] Both parties use "QLT" to reference Thompson's staff; however, the Court was unable to determine specifically what it means. Evidently, members of this staff were assigned various schools, and they met with those schools' administrators on a consistent basis. (Thompson Dep. at 52.) Notably, Dana Bedden referred to his staff as "his cabinet" when he became superintendent. (Bedden Dep. at 12.)

[3] Thompson additionally recommended the replacement of several other administrative officials at the two middle schools.

explained to Plaintiffs that they would not suffer any decrease in salary upon taking an alternative position at a Richmond County public school. (Id.)

Thus, at a March 10, 2007 Board meeting, Thompson first recommended that Gibbons be removed as principal of Glenn Hills Middle and be appointed as assistant principal at Butler High School. (Doc. no. 24-1 at 22-25.) There was some debate among the Board as to whether Gibbons had been given enough time and support to improve the situation at Glenn Hills Middle. (Id. at 23.) A member of the Board made a substitute motion to give Gibbons the opportunity to fill the first elementary school principal vacancy that became available; however, that motion failed. (Id.) The Board subsequently voted on the initial motion to remove Gibbons as principal at Glenn Hills Middle and appoint him as assistant principal at Butler High, but that motion failed as well. (Id.)

Thompson then recommended that Lumpkin be removed as principal at Tubman Middle and reassigned to Cross Creek High School, in the position of assistant principal. (Id. at 23.) As was the case with Gibbons, a member of the Board made a substitute motion that Lumpkin be given the opportunity to fill the first elementary school principal position that became available. In this instance, the motion passed. (Id.) The Board proceeded to appoint Thomas J. Norris, an African

5

American, as the new principal of Tubman Middle. (Id.; Gibbons Dep. at 11.)

After taking up numerous other issues, the Board reconsidered its earlier motion regarding Gibbons. (Doc. no. 24-1 at 25.) The Board, this time, voted to appoint Gibbons as assistant principal at Butler High with the proviso that if an elementary school position became available he would be given the first opportunity to fill the position. (Id.) Immediately thereafter, the Board voted to appoint Glenn Harvey Andrews, an African American, as principal of Glenn Hills Middle. (Id.; Gibbons Dep. at 10.)[4]

## B. Assignment to Elementary School Principal Positions

In August of 2007, Dana T. Bedden replaced Thompson as superintendent. In his first year in this capacity, Spirit Creek Middle School failed to satisfy the AYP requirements and was classified as a "Needs Improvement" school. (Bedden Dep. at 49.) In accordance with the DOE's stated desire for high performing principals to be placed in troubled or underperforming schools, Bedden, on April 15, 2008, recommended to the Board that Spirit Creek Middle's principal,

---

[4] At the same meeting, Janie Norris, the African American principal of Morgan Road Middle, the only other Richmond County school subject to contract monitoring, was removed from her principalship and appointed as the Richmond County Title I Coordinator. (Doc. no. 24-1 at 22.) Upon Thompson's recommendation, the Board appointed Lamonica Lewis, an African American, as the new principal of Morgan Road Middle. (Id.)

Sharon McAlvey, switch positions with Mary Braswell, the principal of Gracewood Elementary School. (Bedden Dep. at 19-22.) Braswell was classified as a "high performing principal" by the DOE. (Id.) The Board ultimately approved this reassignment; neither Gibbons nor Lumpkin were ever considered for the Gracewood Elementary principal position. (Barnes Dep., Ex. 3.)

On April 14, 2008, the Board received a letter of resignation from Carolyn "Pearl" Bailey, the principal at Lake Forest Hills Elementary School. On June 12, 2008, the Board voted for Sherry Loyal to serve as Lake Forest Hills Elementary's interim principal during the site selection process.[5] (Doc. 24-1 at 40-41.) That same day, the Board appointed Gibbons and Lumpkin to principal positions at two Richmond County elementary schools, Terrace Manor Elementary School and Wilkinson Gardens Elementary School. (Id. at 41.)

Several months later, on September 18, 2008, the site selection committee recommended that Sonya D. Bailey, a Caucasian female, be appointed as Lake Forest Hills Elementary's new principal. (Bedden Dep., Ex. 1.) Pursuant

---

[5] The site selection process begins with a basic screening of the applicant pool by the human resources department, which ensures that all applicants have the proper certification and credentials. At the conclusion of this stage of the hiring process, which may only reduce the pool of applicants to as many as twenty candidates, a site selection committee takes over. A site selection committee consists of parents, teachers, and other individuals directly associated with the school, who interview the candidates and provide feedback for selecting a principal. (Bedden Dep. at 38, 46-47.)

to this decision, Bedden formally recommended Bailey for the position at an October 9, 2008 Board meeting. (<u>Id.</u> at 48.) The Board approved Bailey's appointment. (<u>Id.</u>)

## C. Procedural Posture

Plaintiffs filed this lawsuit on October 19, 2009, alleging that they were demoted from their positions at Glenn Hills Middle and Tubman Middle because of their race. Plaintiffs also allege that Defendants failed to promote them to the "first available" elementary school positions for the same reason. Plaintiffs' Complaint contains three counts. Count One alleges that Defendants violated 42 U.S.C. § 1983 and the Fourteenth Amendment's Equal Protection Clause; Count Two alleges that Defendants violated 42 U.S.C. § 1981; and Count Three alleges that Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"). On June 30, 2010, Defendants filed a motion for summary judgment; this motion is considered in full below.

## II. Summary Judgment Standard

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the

outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways-by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met

its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If-and only if-the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.

See <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981).
Rather, the non-movant must respond by affidavits or as
otherwise provided by Federal Rule of Civil Procedure 56.

The Clerk has given the nonmoving parties notice of the
summary judgment motion and the summary judgment rules, of the
right to file affidavits or other materials in opposition, and
of the consequences of default. (Doc. no. 26.) Therefore,
the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d
822, 825 (11th Cir. 1985) (per curiam), are satisfied. The
time for filing materials in opposition has expired, and the
motion is ripe for consideration.

## III. Discussion

### A. Applicable Law

Because Plaintiffs' claims pursuant to 42 U.S.C. § 1983
and 42 U.S.C. § 1981 are asserted as parallel remedies for
alleged violations of Title VII, the elements of these causes
of action are the same and are subject to the same legal
analysis. <u>Polite v. Dougherty Cnty. Sch. Sys.</u>, 314 Fed. Appx.
180, 181 (11th Cir. 2008); <u>Underwood v. Perry Cnty. Comm'n</u>,
431 F.3d 788, 793 (11th Cir. 2005)(*per curiam*); <u>King v.
Augusta</u>, No. CV 106-148, 2008 WL 268913, at *3-*4 (S.D. Ga.
Jan. 29, 2008). "Thus, to survive summary judgment on [their]
racial discrimination claims under § 1981, § 1983 or Title

11

VII, Plaintiff[s] must show that there exists a genuine issue of material fact that Defendants intentionally discriminated against [them] based on race." See King, 2008 WL 268913 at *4.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, there is no direct evidence of discrimination, Plaintiffs may prove discrimination through circumstantial evidence using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In McDonnell Douglas, the Supreme Court established "the allocation of the burden of production and the order for the presentation of proof" in discrimination cases. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 502 (1993). The McDonnell Douglas framework encompasses both a prima facie case and a burden-shifting scheme. This method of proof seeks to narrow a plaintiff's case to its most basic elements. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a feather-weight burden of production shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the action in question. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). If the defendant carries its burden, the burden is shifted back to the plaintiff who must show that the employer's proffered explanation was not the real reason for the employment change, but was instead a pretext for discrimination.[6] Tex. Dep't of Cmty. Affairs, 450 U.S. at 256. The plaintiff, however, at all times carries the ultimate burden of proving by a preponderance of the evidence that the challenged employment decision was motivated by discriminatory animus. See id. at 252-53.

As stated above, Plaintiffs allege two separate instances of discrimination. First, Plaintiffs assert that Defendants racially discriminated against them by demoting them from middle school principals to high school assistant principals. Second, they contend that they were again discriminated against when Defendants failed to promote them to the "first

---

[6] Pretext evidence is that which demonstrates "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted). The Eleventh Circuit has explained that a defendant may make an employment decision for a "good reason, a bad reason . . . or no reason at all as long as its action is not for a [racially] discriminatory reason." See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (quoting Nix v. WLCY Radio/Rahall Commc'n, 738 F.2d 1181, 1187 (11th Cir. 1984)). Furthermore, utilization of subjective factors is not improper. Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001). In fact, subjective factors may legitimately play a substantial role in hiring for positions involving executive or managerial responsibilities. Id. Federal courts are not required to act as a "super-personnel department" that reexamines an entity's business decisions. Id. at 1188.

available" elementary school principal positions.    Each
instance of alleged discrimination is addressed separately
below.


**B.    Demotion Claims**

   **1. Prima Facie Case**

   Plaintiffs allege that they were demoted from their
positions as middle school principals because of their race.
In order to establish a prima facie case under <u>McDonnell</u>
<u>Douglas</u>, each Plaintiff must show: (1) he is a member of a
protected class; (2) he was qualified for the position he
occupied; (3) he was demoted or terminated; and (4) he was
replaced by an individual outside of his protected class.
<u>Gamble v. Aramark Uniform Servs.</u>, 132 Fed. Appx. 263, 266
(11th Cir. 2005); <u>Hinson v. Clinch Cnty., Ga. Bd. of Educ.</u>,
231 F.3d 821, 828 (11th Cir. 2000).

   It is undisputed that the first three elements of the
prima facie case are met.   Plaintiffs are African American,
they were qualified to serve as principals at their respective
middle schools, and their reassignments to positions as high
school assistant principals constituted demotions.   The only
dispute here involves the fourth element of Plaintiffs' prima
facie case.

   Defendants contend that since neither Plaintiff was

replaced by an individual outside of his protected class, Plaintiffs are unable to establish a prima facie case of discriminatory demotion or reassignment. In response, Plaintiffs note that the Eleventh Circuit has allowed plaintiffs to establish a prima facie case of discrimination despite the fact that they had been replaced with a member of their protected class. See Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995); Howard v. Roadway Express, Inc., 726 F.2d 1529, 1534 (11th Cir. 1984). Plaintiffs contend that they need only prove, by a preponderance of the evidence, that they were discharged from a position for which they were qualified "under circumstances which give rise to an inference of unlawful discrimination." (Doc. no. 40 at 12 (citing Jones v. W. Geophysical Co. of Am., 669 F.2d 280, 284 (5th Cir. 1982)).)

The Court recognizes that "[t]he underlying purpose of the fourth element in the McDonnell Douglas formulation is . . . to establish [an] unlawful inference of discrimination" and "proof that [an] employer replaced [a] fired minority employee with a nonminority employee is not the only way to create such an inference." Howard, 726 F.2d at 1535 (quoting Jones, 669 F.2d at 284). However, if a plaintiff cannot show that he was replaced by a member outside of a protected class, as is the case here, then the plaintiff must establish a prima

facie case through other evidence raising an inference of unlawful discrimination. Thus, Plaintiffs would still need to make some showing that replacing Plaintiffs with two African American individuals was a sham, a ruse, or otherwise pretextual. See, e.g., Jones, 669 F.2d at 284 (analyzing whether replacement of plaintiff with another African American employee was pretextual device to disguise discrimination); Ezekiel v. Tift Cnty. Sch. Dist., No. 7:08-cv-127, 2010 WL 3456135 (M.D. Ga. Aug. 27, 2010) (holding that a plaintiff bringing a race discrimination claim failed to present a prima facie case because she had not shown that a member of her protected class was hired to "cover up" the alleged discrimination).

As Defendants point out, the Eleventh Circuit has given numerous examples of how to make such a showing. See Edwards, 49 F.3d at 1521. Plaintiffs, however, have made no such showing in this case. Indeed, Plaintiffs' sur-reply brief states only that the "pleadings are replete with circumstances establishing an inference of race discrimination." (Doc. no. 45 at 2.) Plaintiffs fail to identify any specific facts or evidence that raise a discriminatory inference, and the Court is not obligated to search through the record to determine whether such an inference is warranted.

As such, Plaintiffs have failed to establish a prima

facie case with respect to their discriminatory demotion claims. To hold otherwise would essentially allow Plaintiffs to establish a prima facie case of race discrimination simply by showing that they were qualified minorities who suffered adverse employment actions. This was clearly not the Eleventh Circuit's intent in Edwards and Howard.[7]

### 2. Pretext

Even assuming, *arguendo*, that Plaintiffs could present a prima facie case for discriminatory demotion, their claims would still fail because they cannot show that Defendants' proffered legitimate, non-discriminatory reasons for their demotion are pretextual. Defendants state that Plaintiffs were initially removed from their principal positions in an effort to increase the schools' chances of achieving AYP requirements and to address disciplinary problems. (Doc. no. 23-2 at 19.) According to Defendants, Plaintiffs were only removed after numerous meetings analyzing and discussing the contract monitoring status of Tubman Middle and Glenn Hills Middle; Plaintiffs were removed as a direct result of these meetings.

---

[7] Furthermore, the fact that Plaintiffs were replaced by members of their protected class within minutes, if not seconds, of their demotion places an even greater onus on Plaintiffs to make a showing that the personnel changes were a sham, a ruse, or otherwise pretextual. See Edwards, 49 F.3d at 1521 (addressing the passage of time between discharge and the replacement as a factor in determining whether a minority replacement was pretextual).

In their response, Plaintiffs offer a number of arguments to show that Defendants' reasons are merely pretext. For instance, Plaintiffs note that the individual Board members, when deposed, offered conflicting reasons for Plaintiffs' demotions. (Doc. no. 40 at 13.) However, these differing opinions do not, in and of themselves, indicate pretext. Plaintiffs have provided no evidence demonstrating that any of the reasons provided by the Board members in their depositions lacked a factual basis. Further, the fact that individual Board members' memories may conflict with regard to the demotion of two administrators in a county with sixty schools is insufficient to establish pretext. Moreover, none of the justifications provided by the individual board members indicate that the ultimate decision was racially motivated. See Chapman, 229 F.3d at 1030 (stating that a defendant may make an employment decision for "a good reason, a bad reason . . . or no reason at all as long as its action is not for a [racially] discriminatory reason.").

Plaintiffs provide several additional arguments in an effort to establish pretext, however, these arguments are also unpersuasive. These arguments fail to give due weight to the fact that Plaintiffs' situations were unique within the Richmond County school system. Their two schools had failed to achieve AYP requirements for so long that they were under

contract monitoring.[8]  DOE officials were holding meetings
with the superintendent's staff to discuss changes that could
be made to the improve their "needs improvement" status.
Moreover, the schools were facing closure as a consequence of
not meeting AYP requirements.  Thus, Plaintiffs have failed to
show that the asserted legitimate, non-discriminatory reasons
were pretextual.

As such, Defendants' motion for summary judgment on
Plaintiffs' discriminatory demotion claims is **GRANTED**.


## C. Failure to Promote Claims

Plaintiffs allege that the Board failed to promote them
based upon their race.  Specifically, their contentions
surround the fact that the Board chose not to promote them to
the first available elementary school positions.[9]

### 1. Prima Facie Case

To make a prima facie case of discriminatory failure to
promote, a plaintiff must show that (1) he is a member of a
protected class; (2) he was qualified and applied for the
promotion; (3) he was rejected despite his qualifications; and

---

[8] Notably, the principal of the only other school subject to contract
monitoring, Morgan Road Middle, was likewise removed from her position.

[9] Plaintiffs acknowledge that Defendant Thompson had no involvement
in Bedden and the Board's decisions to appoint Sharon McAlvey principal at
Gracewood Elementary or to assign Sonya Bailey to the principalship
position at Lake Forest Hills Elementary. (Doc. no. 40-2 at 12.)

(4) other equally or less qualified employees who were not members of the protected class were promoted. <u>Weston-Brown v. Bank of Am. Corp.</u>, 167 Fed. Appx. 76, 79 (11th Cir. 2006).

> A plaintiff suing under Title VII must also establish that she suffered an adverse employment action. <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1238 (11th Cir. 2001). To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment . . . [,] as viewed by a reasonable person in the circumstances." <u>Id.</u> at 1239 (emphasis in original). "[T]he asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." <u>Id.</u> Moreover, the adverse action must be material: That is, it must be more than "some de minimis inconvenience or alteration of responsibilities." <u>Doe v. Dekalb County Sch. Dist.</u>, 145 F.3d 1441, 1453 (11th Cir. 1998). . . . [I]n a failure to promote claim, a plaintiff "must be able to show that the position he desired had a greater wage or salary, a more distinguishable title, or significantly more responsibilities." <u>Johnson v. Fulton Concrete Co.</u>, 330 F. Supp.2d 1330, 1339 (N.D. Ga. 2004).

<u>Id.</u> at 80.

Defendants first argue that Plaintiffs cannot establish a prima facie case because they did not apply, nor were they rejected, for the principal positions at issue. Defendants further contend that Plaintiffs' failure to promote claims fail because there was no adverse employment action.

Because there is no evidence of an adverse employment action here, there is no reason to address Plaintiffs' first argument. In their new principal positions, Plaintiffs

received the same pay over the same academic year, received the same title, and had the same general duties and responsibilities as the newly appointed principals at Gracewood Elementary and Lake Forest Hills Elementary. The positions that Plaintiffs desired are not "seriously and materially" different than the positions that they were appointed to. See id. Accordingly, Plaintiffs have not identified a legally sufficient "adverse action" to support their failure to promote claims.

### 2. Pretext

Even assuming, *arguendo*, that Plaintiffs presented a prima facie case of discriminatory failure to promote, their claims would nevertheless fail because Plaintiffs have not shown that the proffered legitimate, non-discriminatory reasons for not placing Plaintiffs in the other two elementary schools are pretextual. With respect to Gracewood Elementary, Defendants state that Plaintiffs were not considered for the principal position because it was never actually "available." Specifically, Defendants contend that the Board swapped Spirit Creek Middle's principal with a "high performing principal" from Gracewood Elementary, pursuant to the DOE's policy encouraging the placement of "high performing principals" in underperforming schools. With regard to the Lake Forest Hills Elementary principal position, Defendants assert that they

appointed the new principal based on the results of the site selection process. Defendants claim that they utilized this process of collecting input from the committee and members of the community to form the basis of their final appointment. That is, Defendants argue that their decision was based on the committee's recommendation and not the race of the candidates.

In response, Plaintiffs attempt to undermine Defendants' contention that their adherence to the site selection process is a legitimate, non-discriminatory reason for the appointment at Lake Forest Hills Elementary. Plaintiffs point out that an African American candidate received the highest score on the site selection process' initial screening, but a Caucasian candidate was nonetheless recommended by the committee. Defendants do not dispute this fact, and instead argue that Plaintiffs are wrongly focusing on only one of several stages of the site selection process. The highest initial screening score is just that, an *initial screening* score. Subsequent to the initial screening, the candidates underwent numerous additional interviews and evaluations before the committee unanimously recommended a candidate. Plaintiffs ignore the myriad of other factors involved in the site selection process; there is nothing to indicate that the candidate with the highest score on the initial screening was the most

deserving of selection.[10]

Finally, without citing to any particular non-discriminatory reason provided by Defendants, Plaintiffs note that there has not been an African American principal at certain Richmond County schools in the last ten years. Plaintiffs contend that some schools in Richmond County are "black schools" and others are "white schools." (Doc. no. 40 at 23.) According to Plaintiffs, once the percentage of African American or Caucasian students at a school exceeds a certain level, Defendants will be certain to appoint a principal of that race.

Defendants respond, and the Court agrees, that Plaintiffs are offering statistics without any corresponding analysis or context. Notably, "[s]tatistics without analysis are virtually meaningless." King, 2008 WL 268913 at *4 (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004)). Plaintiffs cannot meet their burden on showing pretext by merely stating that certain schools have not had an African American principal in the past ten years. In order to satisfy their burden, Plaintiffs would need to provide further explanation and analysis. Here, the Court is without highly relevant information, such as, the number of applicants for

_____

[10] It is worth noting that the candidate that was ultimately selected by the committee received the second highest rating on the initial screening.

23

the principal positions, the qualifications of the relevant applicants, the race of the applicants, and the reasons the applicants were hired or rejected. The statistics cited by Plaintiffs, standing alone, are insufficient to show pretext.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' discriminatory failure to promote claim is **GRANTED**.

### IV. Conclusion

Upon the foregoing, Defendants' Motion for Summary Judgment (doc. no. 23) is **GRANTED**. The Clerk is directed to **CLOSE** the case and **ENTER JUDGMENT** in favor of Defendants.

**ORDER ENTERED** at Augusta, Georgia, this _____ 31st _____ day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE